David Barrett PALMER, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–92–00634–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

June 3, 1993.

Michael E. Tuner, Baytown, for appellant.

John B. Holmes, Alan Curry, Houston, for appellee.

Before O'CONNOR, HEDGES and DUNN, JJ.

## OPINION

DUNN, Justice.

The trial court found appellant, David Barrett Palmer, guilty of possession of a controlled substance, namely cocaine weighing less than 28 grams. The court assessed punishment at eight-years probation and a $1,000 fine. We affirm.

In his sole point of error, appellant contends there was insufficient evidence to prove his knowing possession of the controlled substance beyond a reasonable doubt.

In reviewing the sufficiency of the evidence to support a conviction, the evidence is viewed in the light most favorable to the judgment. *Flournoy v. State,* 668 S.W.2d 380, 383 (Tex.Crim.App.1984). The critical inquiry is whether, after viewing the entire body of evidence in the light most favorable to the judgment, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). The standard of review is the same for both direct and circumstantial evidence. *Christian v. State,* 686 S.W.2d 930, 934 (Tex.Crim.App.1985); *Ramirez v. State,* 822 S.W.2d 240, 244 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd).

There is no bright line amount of a controlled substance that establishes knowing possession. *Campbell v. State,* 822 S.W.2d 776, 777 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd). If the amount of a controlled substance seized from a defendant can be seen and measured, it is sufficient to establish that the defendant knew it was a controlled substance. *Thomas v. State,* 807 S.W.2d 786, 789 (Tex. App.—Houston [1st Dist.] 1991, pet. dism'd); *see Johnson v. State,* 658 S.W.2d 623, 627 (Tex.Crim.App.1983). The State

must affirmatively link the defendant to the contraband in such a manner that a reasonable inference arises that he knew of its existence and whereabouts. *See Ex parte Stowe*, 744 S.W.2d 615, 617 (Tex. App.—Houston [1st Dist.] 1987, no pet.). The prosecution has the burden of proving the defendant guilty, and it must do so by proving each and every element of the offense charged beyond a reasonable doubt. *Geesa v. State*, 820 S.W.2d 154, 162 (Tex. Crim.App.1991). The State is not required to exclude every other reasonable hypothesis other than the guilt of the defendant. *Id.* at 159. The evidence, viewed in the light most favorable to the judgment, follows.

At about 3:45 on the morning of November 27, 1991, Officer Brett Baud was on patrol in the Oak Addition of Baytown. He noticed appellant sitting alone in the passenger's side of a parked vehicle. The officer testified that there was light from the street light at the corner of Booker T. and M.L.K., and that several porch lights were on. Officer Baud approached the vehicle to inquire about the welfare of appellant. He asked appellant to step out of the car, which appellant did. The officer asked appellant several questions, and learned that appellant lived 20–25 miles away. Although the officer detected no alcohol odor, he concluded appellant was intoxicated because he noticed appellant's speech was slurred, his eyes were bloodshot, and he was sweating.

As appellant exited the car, the officer saw what he knew to be a glass crack pipe on the floorboard of the car, between appellant's feet. The crack pipe appeared to have black soot inside it. The officer confiscated the pipe and arrested appellant for possession of narcotics paraphernalia. After arresting appellant for possession of narcotics paraphernalia, the officer conducted a field test on the crack pipe. The pipe tested positive for cocaine. A subse-quent chemical analysis revealed the pipe contained .28 milligrams of cocaine.

To prevail, the State must prove that appellant exercised care, control, and management over the substance, and that he knew what he possessed was contraband. *Martin v. State*, 753 S.W.2d 384, 387 (Tex. Crim.App.1988); *Payne v. State*, 480 S.W.2d 732, 734 (Tex.Crim.App.1972). Appellant argues that the evidence is insufficient to prove the "knowing" element [1] of the crime of possession beyond a reasonable doubt. He argues that, in the absence of direct evidence, the State failed to prove sufficient "affirmative links" between the cocaine and appellant.

Affirmative links may be proved by circumstantial evidence; however, proof amounting to a strong suspicion or even a probability will not suffice. *Dubry v. State*, 582 S.W.2d 841, 844 (Tex.Crim.App. [Panel Op.] 1979). It is also not enough for the State to show only that a defendant was the only one present in the vicinity of a controlled substance. *Humason v. State*, 728 S.W.2d 363, 367 (Tex.Crim.App.1987). Affirmative links may be established by facts and circumstances that indicate the accused's knowledge of and control over the contraband, including the fact that the contraband was in open or plain view, and that it was in close proximity to the accused. *Brazier v. State*, 748 S.W.2d 505, 508 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). Additional factors are: whether the defendant was at the place searched at the time of the search; whether other persons were present at the time of the search; and whether the amount of contraband found was large enough to indicate the defendant knew of its existence. *Classe v. State*, 840 S.W.2d 10, 12 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd).

Appellant relies on *Humason* to support his argument. In *Humason*, the police found a very small amount of contra-

---

1. "Knowing" is defined in the Texas Penal Code as:

   A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

   Tex.Penal Code Ann. § 6.03(b) (Vernon 1974).

band in a car occupied solely by the defendant. 728 S.W.2d at 364. The judgment of the trial court was reversed partly because the State did not provide proof excluding the reasonable hypothesis that Humason was unaware of the presence of the cocaine. *Id.* at 366–67. At the time *Humason* was decided by the Court of Criminal Appeals, in cases involving proof by circumstantial evidence, the State also had to exclude every other reasonable hypothesis except that of the guilt of the defendant. *Id.* After the Court of Criminal Appeals' decision in *Geesa,* this is no longer the case. *Geesa,* 820 S.W.2d at 159. We do not address whether the *Humason* court's decision would be the same under the *Geesa* standard.

■ Appellant argues this case is distinguishable from other cases affirming convictions of possession involving miniscule amounts of controlled substances in that, in those cases, the controlled substances in question were found on the person of the defendants. In this case, the controlled substance was located on the floor, between the feet of appellant.

The chemist testified that he performed two tests on the crack pipe confiscated when appellant was arrested for possession of drug paraphernalia, and concluded the pipe contained .28 milligrams of cocaine, a controlled substance. He testified that if this amount was spread out over the surface of the glass, it would appear as a film. He testified that even after the testing, some cocaine remained in the tube. Thus, based upon the testimony of the chemist, a rational trier of fact could have found the evidence sufficient to establish that the cocaine could be seen and measured, satisfying the first prong of the State's case. *See Thomas,* 807 S.W.2d at 789.

■ As the evidence was sufficient to establish that the substance could be seen and measured, we next look to determine whether sufficient affirmative links exist to connect appellant to the controlled substance to prove "knowing" possession. It should be noted that the amount of the controlled substance, or the location of the drug, is not the only consideration in analyzing the affirmative links between appellant and the controlled substance. Appellant was the sole occupant of the vehicle belonging to his mother. Although appellant was seated in the passenger's seat, there was no evidence of a driver or of another occupant. As the officer approached, he noticed appellant leaning back in the seat with his head rolled back. The crack pipe, containing cocaine residue, was found between appellant's feet, on the floor in front of him. The pipe contained crack cocaine residue. Appellant's speech was slurred, his eyes were bloodshot, he stumbled, and he was sweating. The officer detected no odor of alcohol on appellant. A rational trier of fact could have found beyond a reasonable doubt that appellant knowingly possessed the controlled substance.

We overrule appellant's point of error.

The State raises a cross-point relating to the suppression of statements made by appellant when he was booked that he was addicted to crack cocaine. In light of our holding on appellant's point of error, we do not reach this issue.

We affirm the judgment of the trial court.

O'CONNOR, J., dissents.

O'CONNOR, Justice, dissenting.

May the State convict a defendant for knowingly possessing an invisible amount of a controlled substance? The majority says yes; I say no. This is one more in the long line of appeals challenging convictions based on trace amounts of a controlled substance.

Under a sufficiency point of error, the appellant argues the trace amount of cocaine was "too small to support a conviction." The majority correctly states the test for determining "knowing" possession: If the amount of the controlled substance seized from a defendant can be seen and measured, it is sufficient to establish that the defendant knew it was a controlled substance. *Johnson v. State,* 658 S.W.2d 623, 627 (Tex.Crim.App.1983); *Thomas v. State,* 807 S.W.2d 786, 789 (Tex.App.—

Houston [1st Dist.] 1991, pet. dism'd). This is a conjunctive test, not a disjunctive one. The drug must be seen *and* measured.

I will address the second part of the test first—whether the controlled substance could be measured. This part of the test no longer poses a limitation on how small an amount can be knowingly possessed. By using a spectrograph, a chemist can measure something so small it cannot be seen. Thus, the advance of chemistry has made this part of the test worthless—the chemist can measure an invisible amount of a controlled substance. Surely we cannot hold a person responsible for knowingly possessing something that is invisible to the naked eye and visible only to a spectrograph.[1]

If either part of the two-part test remains valid, it is the first part—whether the cocaine can be seen. Officer Baud did not say he saw cocaine in the pipe; he merely said he saw "soot" inside the pipe. Interestingly enough, that same soot was still present in the crack pipe at trial after the chemist had washed the pipe with acid.

The chemist testified that the cocaine was a film inside the glass pipe. He said .28 milligrams of cocaine might be visible if aggregated; but if spread out, as it was in the glass tube, it is probably not visible. He said a person could look at the glass tube and know only that it had been used for something and was not new. He said, as a chemist, he could not say the film inside the glass tube was cocaine without testing it.

The trace amount in this case, .28 milligrams, could not be seen. Thus, on the first part of the test, we should acquit because the evidence fails the only legitimate part of the test, that is, whether there was enough of the substance to be seen. Most controlled substances are just a white powder. Here, the controlled substance was not even a white powder, but merely a transparent film inside a glass that even a chemist said he would not know was cocaine without testing it.

The Court of Criminal Appeals has not given the lower courts a consistent approach to the issue of the minimum amount of a narcotic necessary to sustain a conviction. In *Tomlin v. State,* 170 Tex.Crim. 108, 338 S.W.2d 735, 737 (1960), the court held 1.7 milligrams of heroin was sufficient to sustain a conviction.[2] In *Coleman v. State,* 545 S.W.2d 831, 835 (Tex.Crim.App. 1977), the court held 5.06 milligrams of cocaine was not sufficient to support a conviction.[3] In *Kent v. State,* 562 S.W.2d 855, 856 (Tex.Crim.App.1978), the court held 3.2 milligrams of cocaine was sufficient to sustain a conviction.

I would sustain the appellant's point of error on the requirement that the drug be "seen," thus eliminating the need to even address the "affirmative links" portion of the inquiry. Assuming, however, there had been enough of the controlled substance to be seen and measured, I will now discuss the affirmative links.

The majority's actual finding on the affirmative links analysis is that the trace amount was located in a crack pipe between the appellant's feet on the floorboard of the car.[4] The majority ignores

---

1. I believe the test should be reformulated and suggest that before a defendant is convicted of "knowing" possession of a controlled substance, the substance must be seen, measured, and tested, and after testing, enough of the substance must remain to permit the defendant to have his chemist test the substance. A defendant is entitled to have the contraband tested by his own chemist if he makes a timely request for such an opportunity. *Mendoza v. State,* 583 S.W.2d 396, 398 (Tex.Crim.App.1979). If we require the State to prosecute only when it can test and preserve enough substance for the defendant's expert to test, we will preserve the integrity of the sufficiency of the evidence test. Either that or we should apply the same test we apply in marihuana cases: A defendant cannot be con-

victed of possessing an amount that is less than a useable amount.

2. In *Tomlin,* the court described the heroin as 1700 micrograms, which converts to 1.7 milligrams.

3. In *Coleman,* the defendant was found with 5/28,000 of an ounce, which is the equivalent of 5.06 milligrams. The formula is 5/28,000 oz. = .000178571 oz.; .000178571 oz./1 × 1 mg./.00003527 oz. = 5.06 mg.

4. I find it interesting that the majority emphasizes the affirmative links argument over the seen and measured one, spending only a para-

the fact that a glass pipe on the floorboard of a car would be difficult to see at 3:45 a.m. Officer Baud testified it was hard to see in the car, because of all the shadows. He had to use his flashlight to see if there was anything in the car.[5] After the appellant got out of the car, Officer Baud checked the car for weapons with his flashlight, and that is when he discovered the glass pipe. He further testified the appellant did not have a flashlight. He said he did not see the appellant lean over, drop the crack pipe, or make any gesture to indicate he was trying to hide it. When Officer Baud approached the car, he said he did not smell anything burning, and there was no testimony indicating the crack pipe was warm or hot. There was nothing, therefore, that showed recent use.[6] On this record, I would find the evidence does not support the affirmative links part of the analysis.

I would sustain the appellant's point of error because the .28 milligrams of cocaine was invisible and thus could not be *seen*, and I would also sustain the point of error because the crack pipe was not affirmatively linked to the appellant.

graph on seen and measured and five paragraphs on affirmative links. The affirmative links analysis in trace amount cases generally comes into play after the court finds the trace amount of drug can be seen and measured. That the majority spends so little time on seen and measured and devotes so much space to affirmative links speaks volumes about the state of the test for knowing possession of drugs: It is the location of the minute amount of drugs that is important, not whether it can be seen and measured. Effectively, we presume that a person knowingly possesses drugs, even invisible amounts, if the drugs are found close to the defendant.

5. The majority ignores Officer Baud's testimony about his need for his flashlight. This evidence is critical because the glass pipe could not be seen without the flashlight. This fact undermines the affirmative links finding.

6. Officer Baud initially testified the soot in the crack pipe was common as to recently used crack pipes. He was forced to retract that statement when he realized seven months later, there was still soot on the pipe. He changed his answer to soot on the pipe means the pipe has been used.